**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

THOMAS EDWARD ZAJAC and                    Case No. 24-49552
CYNTHIA MARIE ZAJAC                         Chapter 13
                                            Judge Paul R. Hage

       Debtors.

—————————————————————/

THOMAS EDWARD ZAJAC                          Adv. Proc. No. 25-04002
CYNTHIA MARIE ZAJAC and
Z-MAN SALES & SOLUTIONS, LLC                 Judge Paul R. Hage

       Plaintiffs

v.

WBL SPO I, LLC and
WORLD BUSINESS LENDERS, LLC

       Defendants

—————————————————————/

**OPINION DENYING DEFENDANTS' MOTION TO SET
ASIDE DEFAULT JUDGMENT**

### I.      Introduction

"Procedure matters," *In re Bennett*, 590 B.R. 156, 164 (Bankr. E.D. Mich.

2018), and a failure to follow it sometimes results in significant consequences.

Before the Court is the *Motion to Set Aside Default Judgment* [Doc. No. 21] (the

"Motion") filed by WBL SPO I, LLC and World Business Lenders, LLC

(collectively, the "Defendants") seeking to set aside the *Judgment* [Doc. No. 18] (the

"Judgment") entered by the Court against them on March 27, 2025 as a result of their failure to respond to the *Complaint* [Doc. No. 1] (the "Complaint") in this adversary proceeding. The Judgment disallowed Defendants' asserted claim in its entirety and voided Defendants' asserted lien against the principal residence of debtors Thomas and Cynthia Zajac (collectively, the "Plaintiffs"). Because Defendants have failed to establish the requisite excusable neglect necessary for setting aside a default judgment pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure, made applicable under Rule 9024 of the Federal Rules of Bankruptcy Procedure, the Motion is denied.[1]

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III. Factual Background

On January 23, 2024, Thomas Zajac, on behalf of his company Z-Man Sales and Solutions, LLC ("Z-Man Sales"), entered into a *Business Promissory Note And Security Agreement* with World Business Lenders, LLC ("WBL").[2] In conjunction with such agreement, the parties entered into a promissory note, a mortgage

---

[1] Hereafter, the Federal Rules of Civil Procedure will be referred to as the "Civil Rules" and the Federal Rules of Bankruptcy Procedure will be referred to as the "Bankruptcy Rules."

[2] Although the relationship of the Defendants is not necessarily relevant to the disposition of this matter, the Court understands that World Business Lenders, LLC is the sole member of WBL SPO I, LLC.

agreement, and personal guaranties, among other documents (collectively, the "Loan Documents"). Under the Loan Documents, Defendants agreed to loan Plaintiffs $312,000.00.[3] In return, Defendants were granted a security interest in certain personal property owned by Z-Man Sales and a mortgage against Plaintiffs' principal residence located at 4307 Burke Road, Newport, Michigan 48166 (the "Principal Residence"). The indebtedness owed under the Loan Documents was personally guaranteed by Thomas Zajac and both Thomas Zajac and Cynthia Zajac signed on as mortgagors to the mortgage.

The Plaintiffs defaulted under the provisions of the Loan Documents, and Defendants moved to foreclose against the Principal Residence. The Plaintiffs filed a petition for relief under chapter 13 of the Bankruptcy Code[4] on October 7, 2025. The Defendants filed a proof of claim in the bankruptcy case related to the indebtedness owing on the Loan Documents [Claim No. 28-1] (the "Claim") in the amount of $560,395.00, which includes principal, interest, fees, costs and a prepayment penalty.

Plaintiffs commenced this adversary proceeding on January 7, 2025 by filing the Complaint. In the Complaint, the Plaintiffs allege that:

---

[3] The total amount actually disbursed by Defendants is disputed by the parties.
[4] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __."

(i)      The interest rate with respect to the indebtedness payable under the Loan
          Documents was 36% per annum and 46% per annum upon the occurrence
          of a default, in addition to various fees and costs that were added on to the
          indebtedness. *See* Complaint at ¶ 25.

(ii)     Far less than the full amount of the indebtedness was actually disbursed.
          *Id.* at ¶¶ 28-30.

(iii)    The interest charged by Defendants violated the criminal usury laws of the
          State of Michigan. *Id.* at ¶ 32.

(iv)    The interest rate exceeds the amount that a Michigan limited liability
          company could agree to and, therefore, is illegal, *ultra vires*, void *ab initio*,
          and a nullity. *Id.*

(v)     As a result, Michigan's wrongful conduct rule precludes the Defendants
          from recovering the principal and interest in its entirety. *Id.*

(vi)    Since the loan *facially* exceeded Michigan's criminal usury statutes, the
          Defendants are presumed to have acted knowingly in charging usurious
          interest. *Id.* at ¶ 34.

The Complaint sought, among other relief:

(a)     A determination that the promissory note and mortgage are unenforceable
          and null and void because they violate the wrongful conduct rule and/or
          because entry into such documents was illegal under Michigan law. *Id.* at
          ¶¶ 37-42.

(b)     Disallowance of the Claim in its entirety. *Id.* at ¶¶ 43-47.

(c)     Avoidance of Defendants' asserted lien against the Principal Residence
          pursuant to section 506(d). *Id.* at ¶¶ 48-49.

(d)     Declaratory relief that the Loan Documents included usurious interest rates
          and are therefore void and unenforceable under the wrongful conduct rule
          and/or because entry into such documents was illegal under Michigan law.
          *Id.* at ¶¶ 50-58.

On February 6, 2025, Defendants' counsel filed a *Notice of Limited Appearance* [Doc. No. 7], which stated that the appearance was for the "limited purpose of securing an extension to the answer period" with respect to the Complaint.[5] The parties also filed a *Stipulation to Extend the Deadline to File a Response* [Doc. No. 8] (the "Stipulation"), extending Defendants' deadline to answer the Complaint by twenty days to February 26, 2025.[6]

The extended, agreed upon, February 26, 2025 deadline passed with no answer or other responsive pleading with respect to the Complaint. On March 4, 2025, the Clerk of Court entered a default [Doc. No. 13]. That same day, Plaintiffs filed a *Motion for Default Judgment As To All Defendants* [Doc. No. 14] (the "Default Judgment Motion"). The Court scheduled the matter for an in person hearing on March 27, 2025. *See* Fed. R. Civ. P. 55 (requiring at least seven days' notice before entry of a default judgment if the party against whom the judgment is sought has appeared personally or by a representative).

---

[5] As a result of filing this appearance, Defendants' counsel automatically received electronic notice of all documents subsequently filed in the adversary proceeding, including the *Default Entry By Clerk* [Doc. No. 13], the *Motion for Default Judgment As To All Defendants* [Doc. No. 14], and the Court's *Notice of Hearing* [Doc. No. 16] regarding same.

[6] Both the initial *Notice of Limited Appearance* and the Stipulation were stricken by the Court [Doc. Nos. 9 and 10] because the case caption was incorrect/incomplete. Defendants clearly received notice of this, as their counsel filed a corrected *Notice of Limited Appearance* [Doc. No. 11] six days later. The Defendants failed to file a corrected stipulation extending the answer deadline, although both the Clerk of Court and the Plaintiffs apparently operated as if the stipulated, extended deadline, controlled.

The Court specifically set the hearing date for the Default Judgment Motion several weeks out to allow the parties ample time to act. But Defendants never moved to set aside the default, nor did they file a response to the Default Judgment Motion. Minutes before the scheduled hearing, Defendants' counsel called the Court to inform it that he had just been engaged by Defendants (apparently to appear, this time, in an unlimited manner) and requested the ability to appear at the Default Judgment Motion hearing remotely. Despite the matter being scheduled for an in-person hearing, the Court allowed the telephonic appearance of Defendants' counsel.

Following the hearing, and after entertaining arguments from all parties, the Court entered the Judgment on March 27, 2025. The Judgment granted more limited relief than what the Default Judgment Motion initially sought,[7] but it did disallow the Claim in its entirety and voided the lien on the Principal Residence pursuant to section 506(d).

On April 10, 2025, Defendants filed the instant Motion, which included a *Brief In Support of Motion to Set Aside Default Judgment* (the "Brief"). Five days later, Defendants filed a *Supplemental Brief In Support of Motion to Set Aside Default Judgment* [Doc. No. 23] (the "Supplemental Brief").[8] In such filings, Defendants

---

[7] The Court determined that certain relief requested in the proposed judgment attached to the Default Judgment Motion was not adequately plead in the Complaint and, therefore, was not deemed admitted pursuant to Civil Rule 8(b)(6) which is made applicable in this proceeding by Bankruptcy Rule 7008(b)(6).

[8] In deciding this Motion, the Court has considered the arguments asserted by the Defendants both in the Brief and in the Supplemental Brief.

sought relief from the Judgment pursuant to Civil Rule 60(b)(1), made applicable under Bankruptcy Rule 9024, for mistake or excusable neglect.

The Court held oral argument on the Motion on May 19, 2025. At the hearing, Defendants made, for the first time, an oral motion under Civil Rule 59, made applicable in this adversary proceeding pursuant to Bankruptcy Rule 9023, to amend the Judgment.

## IV. Discussion

Civil Rule 55(c), as incorporated by Bankruptcy Rule 7055, states that the court may set aside an entry of default for "good cause shown," or if the default judgment has been entered, may "likewise set it aside in accordance with Rule 60(b)." Under Civil Rule 60(b)(1), a court may relieve a party from a final judgment for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect…"

The party seeking to invoke Civil Rule 60(b) bears the burden of establishing that its prerequisites are satisfied. *See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002). The ultimate "decision on a motion to set aside a default judgment is left to the discretion of the trial judge." *Bavely v. Powell* (*In re Baskett*), 219 B.R. 754, 757 (B.A.P. 6th Cir. 1998) (citing *Meganck v. Couts* (*In re Couts*), 188 B.R. 949, 951 (Bankr. E.D. Mich.1995)).

Regarding the statutory framework, the Sixth Circuit Court of Appeals has stated:

> When a defendant seeks relief from an entry of default, three equitable factors are considered to determine if "good cause" has been shown under the Rule 55(c) component of the analysis: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced."

*Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983)).

But once an entry of default has ripened into a default judgment, courts must determine whether the defendant has met the stricter requirements of Civil Rule 60(b). *Burrell,* 434 F.3d at 832. "Public policy favoring the finality of judgments is reflected in the more specific requirements of Rule 60(b) that apply once an actual default judgment has been entered and damages have been calculated." *Id.*; *see also Waifersong*, 976 F.2d at 292 ("But once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation.").

"[A] determination of whether to set aside a default judgment under Civil Rule 60(b)(1) requires a three-step analysis." *Gold v. Soueidan (In re Soueidan)*, 652 B.R. 837, 842 (Bankr. E.D. Mich. 2023) (citing *Waifersong*, 976 F.2d at 292). First,

the moving party must "demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect."[9] *Id.* Only *after* this threshold requirement has been satisfied may a court consider the remaining two steps of the analysis; namely "whether the [moving party] has a meritorious defense," and "whether the [non-moving party] will be prejudiced" by relief from judgment. *Id.*

### a. Excusable Neglect

To demonstrate that setting aside the Judgment would be appropriate under Civil Rule 60(b)(1) based on "excusable neglect," Defendants must show *both*: (i) that their conduct in failing to timely respond to the Complaint constituted "neglect" within the meaning of Civil Rule 60(b)(1), and (ii) that their "neglect" was excusable. *Soueidan,* 652 B.R. at 843.

The Supreme Court discussed what constitutes excusable neglect in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993).[10] There, the Supreme Court explained that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or ... 'to leave undone or unattended to esp[ecially] through carelessness.'" *Id.* at 388 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 791 (1983)). Based on the ordinary meaning of "neglect,"

---

[9] In *Waifersong*, the Sixth Circuit clarified that, where a default judgment has been entered, "the culpability factor is framed in terms of 'mistake, inadvertence, surprise, or excusable neglect.'" *In re Waifersong,* 976 F.2d at 292.

[10] Although the *Pioneer* decision was in the context of "excusable neglect" under Bankruptcy Rule 9006(b)(1), bankruptcy courts have repeatedly applied *Pioneer*'s definition of "excusable neglect" under the Civil Rule 60(b)(1) standard.

the Supreme Court concluded that the concept of "neglect" under Civil Rule 60(b)(1) denotes that "a party is partly to blame" for failing to act. *Id.* at 393.

In this case, Defendants stipulated to an extended deadline to respond to the Complaint with knowledge that their failure to respond would result in the entry of a default. Failure to timely respond to the Complaint constitutes neglect by the Defendants, plain and simple. *In re Bennett*, 590 B.R. at 162. The pivotal question is whether such neglect is excusable.

In *Pioneer*, the Supreme Court explained that a determination of whether a party's neglect of a deadline is excusable:

> ... is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission ... [including] the danger of prejudice to the [party opposing relief], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395. The "most important" of these factors is "the reason for the delay, including whether it was within the reasonable control of the movant." *In re Soueidan*, 652 B.R. at 844; *see also United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) ("The *Pioneer* factors 'do not carry equal weight; the excuse given for the late filing must have the greatest import.").

In looking at the "reason for delay," courts frequently focus both on the conduct of the movant and of their counsel. *See Pioneer*, 507 U.S. at 396-97. Where a failure to respond to a complaint was the result of a strategic decision by a client

or its counsel, mistake or excusable neglect is not present. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) ("Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise"); *In re Mayes*, 2019 WL 1087888 at *2 (Bankr. E.D. Mich. Mar. 6, 2019) ("Where a party's behavior amounts to a deliberate disregard of the proceedings pending against her–and she intentionally chooses to ignore the proceedings–the Court is not obligated to grant relief from a default judgment.").

Moreover, the Sixth Circuit has held that: "Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *FHC Equities, LLC v. MBL Life Assurance Corp.*, 188 F.3d 678, 685 (6th Cir. 1999) (citing *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986)). In this regard, the Bankruptcy Appellate Panel of the Sixth Circuit has stated:

> case law consistently teaches that out-and-out lawyer blunders—the type of action or inaction that leads to successful malpractice suits by the injured client—do not qualify as 'mistake' or 'excusable neglect' within the meaning of Rule 60(b)(1).

*In re Bonfiglio*, 2018 WL 5295879 at *4 (B.A.P. 6th Cir. Oct. 24, 2018) (citing *Barron v. Univ. of Mich.*, 613 F. App'x. 480, 487 (6th Cir. 2015)).

In this case, the Defendants assert that their neglect is primarily attributable to miscommunication between them and their counsel:

11

A cacophony of unfortunate events and miscommunication led Defendants to fail to respond to the Complaint. These events occurred during a time when Defendants' counsel's law firm was changing their primary Michigan bankruptcy counsel and Defendants themselves were changing loan analysts. Additionally, the limited appearance by Defendants' counsel created confusion in the mind of Defendants as [to] the extent of that representation.

Motion at ¶ 13.[11] Defendants failed to cite any legal authority in their briefing or at oral argument that would support their claim that the aforementioned conduct was excusable.

To the contrary, the "unfortunate events" and "miscommunications" between Defendants and their counsel do not justify the complete inaction which led to the Judgment. Despite having clear knowledge of, and even appearing in, this adversary proceeding, Defendants made no effort whatsoever to answer the Complaint or otherwise advance the litigation.

Defendants have asserted that this inaction stems from a misunderstanding regarding the scope of counsel's representation. Defendants' counsel claims that it believed that it was only retained to obtain an extension of time to respond to the Complaint whereas Defendants allegedly believed that their counsel had been retained to provide full representation in the adversary proceeding.[12] At oral

---

[11] Notably, Defendants failed to file any affidavit or other documentary evidence verifying these explanations for their failure to answer the Complaint.

[12] The Court has noted at hearings in this adversary proceeding that it is skeptical about the existence of any legal basis for a "limited appearance" solely to secure an extension of an answer deadline. Defendants' counsel has failed to point to any case law or rule which would support the

argument, Defendants' counsel stated that this miscommunication on retention was due to their reliance on a software intake program. According to Defendants' counsel, Defendants failed to process their retention request through that program, and instead, may have requested retention of counsel via email.

Notwithstanding this miscommunication, Defendants and counsel were unquestionably aware of the pending adversary proceeding, as evidenced by the filing of the limited appearance and the Stipulation, which then prompted the electronic receipt of all future filings. Moreover, Defendants' counsel stated at oral argument that both the client and the firm were aware of the answer deadline and that attempts were made by the firm to communicate with the client about that deadline without success. But counsel acknowledged at the hearing on the Motion that no attempts were made to: (i) secure an additional extension of time from the Plaintiffs or the Court to respond to the Complaint or, of course, (ii) answer or otherwise respond to the Complaint.

Defendants, through counsel, also received electronic notice on March 4, 2025 of both the default entered by the Clerk of Court, *see Certificate of Service* [Doc. No. 15], and the Default Judgment Motion, *see Certificate of Service* [Doc. No. 17]. No motion to set aside the default was filed. Indeed, it was not until just minutes

---

practice or the idea that a party can limit the scope of its representation in a notice of appearance in the manner attempted here.

before the March 27, 2025 hearing on the Default Judgment Motion that Defendants or their counsel took any action whatsoever. And that action was only to appear telephonically at the March 27, 2025 hearing. Thereafter, they did not file the Motion until April 10, 2025.

At best, the Defendants and their counsel were inexcusably negligent, and the case suffered from the sort of "out and out lawyer blunders" that do not justify relief. *In re Bonfiglio*, 2018 WL 5295879 at *4. At worst, Defendants and their counsel displayed a "deliberate disregard" for the pending proceedings that does not lend itself to relief under Civil Rule 60(b). *Mayes*, 2019 WL 1087888 at *2. The truth may lie somewhere in the middle. Nevertheless, courts have regularly recognized that a party's failure to meet a filing deadline is simply not the "excusable neglect" that is necessary to invoke relief under Civil Rule 60(b). *See, e.g.*, *Symbionics, Inc. v. Ortlieb*, 432 Fed. App'x. 216, 220 (4th Cir. 2011) (holding "that the district court abused its discretion when it determined that ... counsel's computer calendaring error constituted excusable neglect"); *In re Soueidan*, 652 B.R. at 843 (holding that defendant's failure to timely respond to a complaint based upon defendant's attorneys mistaken belief that he had additional time, "weigh[ed] strongly against finding that [d]efendant's neglect is excusable"); *In re Peek*, 614 B.R. 274 (Bankr. E.D. Mich. 2020) (holding that creditor's "inadvertent" failure to timely respond to debtors' valuation motion did not amount to excusable neglect).

Based on the foregoing, the Court holds that the reason for delay *Pioneer* factor weighs heavily against a finding of excusable neglect. Here, the reasons provided for the delay in responding to the Complaint, in addition to being unpersuasive, were also well within the control of Defendants and their counsel. The remaining *Pioneer* factors were largely unaddressed by the Defendants in their briefing and at oral argument. In any event, the Court finds that they are mostly neutral in this case.

### b. *Meritorious Defense and Prejudice to Plaintiffs*

Because the Court cannot find that there was excusable neglect or mistake under Civil Rule 60(b)(1), it need not consider the existence of a meritorious defense or the absence of substantial prejudice to the Plaintiffs should relief be granted. *Waifersong*, 976 F.2d at 292 ("It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors").

Nevertheless, the Defendants devoted most of their briefing, and oral argument, asserting that meritorious defenses exist with respect to the claims in the Complaint. They argue that the Loan Documents do not violate usury law if the law of New Jersey applies instead of Michigan law. To the extent that Michigan law applies, they apparently concede that the interest rates violate Michigan's civil usury statute. *See* MCL 438.31. But they allege that the Loan Documents do not violate

the Michigan criminal usury statute, MCL 438.41, which caps the permissible

interest rate at 25%, because that statute requires that a lender "knowingly" charge

a usurious interest rate.[13] Absent a criminal violation, they argue, it would be

improper to apply the so-called "wrongful conduct rule"[14] to disallow the principal

component of the Claim. Rather, only the unlawful interest component of the Claim

should be disallowed. Finally, even if the Loan Documents violate the criminal

usury statute, they argue that the "wrongful conduct rule" is inapplicable to deny the

principal component of the Claim because a sufficient causal nexus does not exist

---

[13] MCL 438.41 provides, in pertinent part, that:

> A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period….

MCL 438.41 (emphasis added).

[14] Under Michigan law, the wrongful conduct rule generally refers to two maxims founded in the common law:

> First, a plaintiff's claim is barred "[w]hen a plaintiff's action is based, in whole or in part, on his own illegal conduct." Second, the doctrine of *in pari delicto* bars a plaintiff's claim "when a plaintiff's action is based on his own illegal conduct and the defendant has participated equally in the illegal activity." In order [to] successfully assert the wrongful conduct rule, a "[claimant's] conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." In addition, "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages."

*Kravitz v. Summersett (In re Great Lakes Comnet, Inc.)*, 588 B.R. 1, 10-12 (Bankr. W.D. Mich. 2018).

between their allegedly illegal conduct and the principal amount asserted. The Plaintiffs have disputed each of these arguments.

The Court is aware of the recent opinion by Chief Judge Daniel S. Opperman analyzing Michigan usury law in *Top Shelv Worldwide, LLC v. Worldwide Business Lenders, LLC and WBL SPO I, LLC (In re Top Shelv Worldwide, LLC)*, 2025 WL 887262 (Bankr. E.D. Mich. March 17, 2025) which, coincidentally, involved the exact same lenders and similar loan terms. In that case, Judge Opperman applied Michigan law notwithstanding a New Jersey choice of law provision in the relevant promissory note, concluding that the "transaction, the location of the subject property and the parties are tied to Michigan," and noting a strong public policy in favor of protecting Michigan borrowers from lenders charging usurious interest rates. *In re Top Shelv Worldwide*, 2025 WL 887262 at \*5-6; *see also Soaring Pine Capital Real Estate & Debt Fund II, LLC v. Park St. Grp. Realty Servs., LLC*, 999 N.W.2d 8, 16 (Mich. 2023) (usury laws embody a "public policy ... to protect borrowers from excessive interest rates imposed by lenders.").

Having determined to apply Michigan law, Judge Opperman described Michigan usury law as follows:

> Usury law is unclear and references other statutes that, in turn, are inconclusive. The Court, in this case, follows this circuitous statutory path and reaches a conclusion that some may find unfair and devoid of common sense; others will find it proper and consistent with statutory language.

*Id.* at \*2.[15]  After reviewing the statutory text and recent caselaw, Judge Opperman held that the loan transaction at issue in that case did not violate Michigan's usury laws because there, unlike here, the underlying collateral was commercial real property instead of a single family residence and, therefore, an exception to the usury statutes applied. *See* MCL 438.31c(11) (permitting parties to agree to any rate of interest where the primary security for the loan is real property other than a single family residence).

In this case, the parties' respective arguments were not fully briefed or argued because Defendants failed to answer the Complaint.  Pursuant to Civil Rule 8(b)(6), made applicable in this proceeding by Bankruptcy Rule 7008, Plaintiffs' well-pled allegations in the Complaint were deemed as true upon the entry of the Judgment. *See, e.g.*, *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *see also Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5 (1st Cir. 1985) ("There is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its [ ] claims must be considered established as a matter of law.").

Given the somewhat uncertain state of the law on usury, the Defendants' alleged meritorious defenses are arguably colorable.  *See Thompson v. Am. Home*

---

[15] The Court joins Judge Opperman in his suggestion that, given the "distressing" and "disjointed" state of usury law in Michigan, "the Michigan Legislature may wish to consider clarifying this area of the law." *In re Top Shelv Worldwide, LLC*, 2025 WL 887262 at \*10.

*Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (noting that to establish a meritorious defense, the defendant must merely state a defense that contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense.").

As noted above, however, the Court need not reach a conclusion on these issues because the Court has found that the Defendants have failed to establish that their neglect was excusable under Civil Rule 60(b)(1). *See Waifersong*, 976 F.2d at 292. Because the Defendants could not demonstrate that their conduct was the result of mistake or excusable neglect, demonstration of the existence of a meritorious defense and lack of prejudice does not assist their cause.

### c. *Defendants' Oral Motion for Civil Rule 59 Relief*

At oral argument, Defendants' counsel raised, for the first time, an argument under Civil Rule 59, requesting that the Judgment be amended because the Judgment was inconsistent with the facts alleged in the Complaint. While the Court has serious doubts as to the merits of this oral motion,[16] in any case, it is untimely. Civil Rule 59 is made applicable in bankruptcy cases by Bankruptcy Rule 9023. The rule requires that a motion to alter or amend a judgment must be "*filed* within *14 days* after

---

[16] As noted, the Complaint specifically alleged that "the interest rate charged by defendants exceeds the criminal usury rate set by M.C.L. § 438.41. As a result, Michigan's wrongful conduct rule precludes WBL and/or WBL SPO from recovering the principal and interest in its entirety." *See* Complaint at ¶ 32. Based on the foregoing, and other arguments alleged therein, Count 2 of the Complaint requested disallowance of the Claim "in its entirety" and Count 3 sought to "void the lien of the defendants to the extent such claim is disallowed." This is the exact relief provided in the Judgment.

judgment is entered." Fed.R.Civ.P. 59(e) (emphasis added). Here, the oral motion was made 53 days after the Judgment was entered and, thus, it is untimely.

## V. Conclusion

For the reasons stated, the Court denies the Motion. The Court will enter a separate order consistent with this opinion.

**Signed on May 23, 2025**



/s/ Paul R. Hage
_____
**Paul R. Hage**
**United States Bankruptcy Judge**